**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ATIBA WICKER,** :<br>:<br>**Petitioner** :<br>:<br>**v.** :<br>:<br>**PA BOARD of PROBATION and** :<br>**Parole,** *et al.*, :<br>:<br>**Respondents** : | **CIVIL NO. 3:CV-09-0167**<br><br>**(Judge Caputo)** |

**M E M O R A N D U M**

**I.      Introduction**

The petitioner, Atiba Wicker, a pro se inmate currently incarcerated at the Frackville State Correctional Institution (SCI-Frackville), in Frackville, Pennsylvania, has filed the present Petition for Writ of Habeas Corpus challenging his repeated denials of parole. Named as respondents are the Pennsylvania Board of Probation and Parole (the Board), Superintendent Shannon, and the Pennsylvania State Attorney General. (Doc. 1, Pet.) Also pending before this Court are Mr. Wicker's motions requesting the Court conduct an in camera review of a document relied upon by the Board in denying him parole as well as a motion for summary judgment. (*See* Docs. 14 and 16.) For the reasons that follow, Mr. Wicker's request for habeas relief will be denied, as will his two pending motions.

## II. Facts and Procedural History

In 1993, Mr. Wicker was arrested in Philadelphia County on three separate occasions for a variety of offenses including four counts of robbery.[1] Mr. Wicker pled guilty to all four counts of robbery and was sentenced in the Philadelphia County Court of Common Pleas to four concurrent terms of 8 ½ to 20 years imprisonment. (Doc. 10, Respondents' Answer to the Pet. at R. 16.)[2] Originally, Mr. Wicker's controlling minimum date was February 17, 2003, and he had a maximum date of August 17, 2014. (*Id*. at R. 16.) However, due to a parole violation (which will be discussed at greater detail *infra)*, Atiba Wicker's present maximum date is May 30, 2015. (*Id*. at R. 62.)

The Board first denied Mr. Wicker parole on October 6, 2003. (*Id*. at R. 20.) The Board advised that he would be eligible for review again on or after February 2004. (*Id*.) On April 9, 2004, the Board released Atiba Wicker on parole. (*Id*. at RR. 22 - 24 and R. 26.) On August 19, 2004, the Board declared him delinquent after he failed to return to his approved community corrections center. (*Id*. at R. 32.)

The Board had no knowledge of Mr. Wicker's whereabouts until May 29, 2005, when he was was arrested for recklessly endangering another person (REAP) and fleeing or attempting to elude a police officer. (*Id*. at RR. 34 - 39.) On June 6,

---

[1] *See* Court of Common Pleas Philadelphia county docket sheets for *Commonwealth v. Wicker*, Nos. CP-51-CR-0913281-1993; CP-51-CR-0913371-1993; and CP-51-CR-0925121-1993, all available through Pennsylvania's Unified Judicial Docket System docket research at: http://ujsportal.pacourts.us/.

[2] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

2005, Mr. Wicker was returned to a state correctional facility due to the pending parole violation charges. (*Id*. at R. 41.) On November 7, 2005, the new criminal charges were dismissed. (*Id*. at R. 35.) Following a parole violation hearing, the Board issued an April 4, 2006, decision continuing his parole. (*Id*. at R. 44.) Mr. Wicker was released on parole from SCI-Frackville on April 11, 2006. (*Id*. at R. 41.)

On September 28, 2006, Atiba Wicker was again declared Atiba Wicker was declared delinquent by the Board for absconding from his assigned community corrections center. (*Id*. at R. 46.) Mr. Wicker's whereabouts were unknown from September 27, 2006 until July 10, 2007, when he was arrested in Philadelphia County for possession of a controlled substance and use/possession of drug paraphernalia. (*Id*. at R. 49.) On July 24, 2007, Mr. Wicker was also charged with criminal attempt murder; aggravated assault; criminal conspiracy engaging murder; person not to possess, use a firearm; firearms not to be carried without a license; carrying a firearm in public in Philadelphia; possession of instrument of crime, simple assault and REAP. (*Id*. at RR. 53 - 58.) On August 21, 2007, Mr. Wicker was detained by the Board pending resolution of the July 10, 2007, drug charges. (*Id*. at R. 60.) On September 20, 2007, the drug charges were withdrawn. (*Id*. at RR. 48 - 51.) A month later, the charges stemming from the July 24, 2007, arrest were dismissed. (*Id*. at RR. 53 - 58.)

On January 9, 2008, the Board recommitted Atiba Wicker as a technical parole violator (TPV) for violating the conditions of his parole (failure to report). (*Id*. at R. 62.) Mr. Wicker was ordered to serve 6 months backtime for failure to report

-3-

as required. (*Id*.)

On March 25, 2008, the charges arising out of the July 24, 2007 arrest were refiled in Philadelphia Municipal Court. (*Id*. at RR. 53 - 58.) On April 8, 2009, the Board denied Mr. Wicker reparole. (*Id*. at R. 764.) In refusing to grant parole, the Board stated as follows:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act, The Board of Probation and Parole, in the exercise of its discretion, has determined that this time that: your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were parole/reparoled. Therefore, you are refused parole/reparole at this time. The reasons for the Board's decision include the following:
>
> Your minimization/denial of the nature and circumstances of the offense(s) you committed.
>
> Your prior history of supervision failure(s).
>
> Your need to participate in and complete additional institutional programs.
>
> Your interview with the Hearing Examiner.
>
> Other factors deemed pertinent in determining that you should not be paroled: you appear to lack insight regarding your criminal history and prior parole failure.
>
> You will be reviewed in or after October, 2008.
>
> At your next interview, the Board will review your file and consider:
>
> Whether you have successfully completed a treatment program for: Thinking for a Change.
>
> Whether you have maintained a favorable recommendation fro parole from the Department of Corrections.

-4-

> Whether you have maintained a clear conduct record
> and completed the Department of Corrections'
> Prescriptive Program(s).
>
> You may file an application for parole/reparole no sooner
> than 1 year after the date the last decision denying
> parole/reparole was recorded.

(*Id*. at RR. 64 - 65.)

On June 17, 2008, the charges flowing from the July 24, 2007, arrest were dismissed. (*Id*. at RR. 53 - 58.) On September 29, 2008, Governor Rendell announced a parole moratorium pending a review of the process by which Pennsylvania offenders, especially violent offenders, were released after two Philadelphia police officers were shot and killed by Commonwealth paroled offenders within a few months of each other. (Doc. 1, Pet. at RR. 35 - 39.) A Press Release from Governor Rendell's office states that during this moratorium, "[t]he Board of Probation and Parole may continue to conduct parole hearings and case reviews, but not grant parole." (*Id*. at R. 35.) When challenged as to his authority to impose such an edict, Governor Rendell stated, "I don't have the right to legally oppose [i.e. the grant of parole], but I have the right to ask the parole board to refrain [from granting] it, so guess what? They're refraining ..." (*Id*. at R. 38). The moratorium was lifted on October 20, 2008, as to non-violent offenders, and then completely lifted as to all state convicts on December 1, 2008. (*Id*. at RR. 38 - 39.)

On November 20, 2008, Mr. Wicker was again refused reparole. (Doc. 10 at RR. 67 - 68.) In refusing to grant parole, the Board stated as follows:

> Following an interview with you and a review of your file,
> and having considered all matters required pursuant to
> the Parole Act, The Board of Probation and Parole, in the

> exercise of its discretion, has determined that this time
> that: you are denied parole/reparole. The reasons for the
> Board's decision include the following:
>
> Your prior unsatisfactory parole supervision history.
>
> Reports, evaluations and assessment/level of risk
> indicates your risk to the community.
>
> The negative recommendations made by the prosecuting
> attorney.
>
> You are to be reviewed in or after 10/20/2009.
>
> At your next interview, the Board will review your file and
> consider:
>
> Whether you have successfully participated
> in/successfully completed a treatment program for
> prescriptive program plan.
>
> Whether you have maintained a favorable
> recommendation fro parole from the Department of
> Corrections.
>
> Whether you have maintained a clear conduct record.
>
> You may file an application for parole/reparole no sooner
> than 1 year after the date the last decision denying
> parole/reparole was recorded.

(*Id*. at RR. 67 - 69.)

Following this denial, Mr. Wicker filed the present Petition asserting two independent basis of relief. First, Petitioner argues that his due process rights were violated by the Board's repeated denials of reparole for arbitrary reasons. Specifically Atiba Wicker claims the Board's "continued reliance on unchanging

-6-

circumstances[3] runs contrary to the rehabilitative goals espoused by the prison system and results in an abuse of discretion, is arbitrary, capricious and violative of the fundamental concepts of due process." (Doc. 1 at R. 21.)  He argues that the Board abused its discretion when it overlooked his rehabilitative accomplishments which outweigh the Board's reasons for denying him parole.  In support of this argument he notes his continued misconduct free stay in prison, the Department of Corrections' (DOC's) repeated recommendation for his parole, the DOC's recommendation that he not participate in any alcohol or drug treatment programs, and his recent satisfactory completion of the DOC's Thinking for a Change program. (*Id*. at RR. 32 -34.)  Finally, he avers that the prosecuting attorney issued him a negative parole recommendation in retaliation for his decision not to testify for the Commonwealth in a murder trial.  (Doc. 14, Motion for In Camera Inspection of Negative Parole Recommendation by Prosecuting Attorney).

Atiba Wicker's second basis for habeas relief is that Governor Rendell violated the constitutional mandate of separation of powers by issuing a blanket statewide moratorium on parole which negatively influenced his the Board's November 20, 2008 decision denying him reparole.  (Doc. 17, Petitioner's Decl. in Supp. of Mot. for Summ. J. at R. 3.)  Atiba Wicker argues that when the Board "acquiesced" in the Governor's illegal activities, it too disregarded its constitutional duties by failing to afford him an individually based parole review.  (*Id*.)

---

[3] Mr. Wicker defines these "unchanging circumstances" as his prior supervision failures and prior record/current offense.  *See Id*. at R. 21.

## III. Standard of Review

Section 2254(a) of Title 28 of the United States Code gives this Court jurisdiction to entertain a habeas petition brought by a person in custody pursuant to a state court judgment:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a); *see Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001) (jurisdiction to entertain state prisoner's habeas petition challenging denial of parole lies under § 2254, rather than § 2241).[4]

Atiba Wicker's Petition challenging the denial of his parole is appropriately before the Court as a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.

## IV. Discussion

### A. Exhaustion.

Respondents suggest Mr. Wicker's claim "that the parole [Board's] refusal failed to give him proper notice of why he was refused [parole]," does not assert a constitutional challenge, and thus must first be presented to the Pennsylvania

---

[4] For the convenience of the reader of this Memorandum/Opinion in electronic format, hyperlinks to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of this Court.

Commonwealth Court before this Court may consider his claims. (Doc. 11 at R. 7.) As such, Respondents suggest the Petition should be dismissed.

Without unnecessary elaboration, the Court declines to dismiss the Petition on exhaustion grounds. State prisoners must exhaust every opportunity for state review of their claims before filing a petition for writ of habeas corpus in the federal courts. 28 U.S.C. § 2254(b)(1)(A). A prisoner has not exhausted every opportunity for state review "if he has the right under the law of the State to raise, by any available procedure, the question presented." *Id*. § 2254(c). Aside from a challenge to a parole decision premised upon the Ex Post Facto Clause, Pennsylvania courts have not recognized writ of mandamus or direct appeal as possible avenues of relief for constitutional claims concerning parole denials. *See DeFoy v. McCullough*, 393 F.3d 439, 445 (3d Cir. 2005). Accordingly, the Court holds there were no potential state court remedies that Mr. Wicker could have exhausted prior to filing this federal habeas petition. Therefore, we will address the merits of Mr. Wicker's petition.

### B. Procedural Due Process Claim.

The authority to grant parole under Pennsylvania law is vested solely in the Board. *See* 61 PA. CON. STAT. § 331.17 (repealed 2009, Aug. 11, P.L. 147, No. 33, § 7. *See now*, 61 PA. CON. STAT. § 6132.)[5] As such, the Board is required to

---

[5] 61 PA. CONS. STAT. § 331.15 to § 331.21a, were repealed effective October 13, 2009. *See* now, 61 PA. CONS. STAT. § 6121 - § 6138. These changes in the Parole Act, however, post-date the Board's November 2008 denial of Mr. Wicker's reparole and thus have no impact our review in this matter.

consider the nature and character of the offense(s) committed, the general character and history of the prisoner, the written or personal statement or testimony of the victim or victim's family, and the recommendations of the trial judge, the district attorney and each warden or superintendent who has had control over the applicant. *See* 61 PA. CON. STAT. § 331.19 (repealed 2009, Aug. 11, P.L. 147, No. 33, § 7. *See now* 61 PA. CON. STAT. § 6135.)

The granting of parole prior to the expiration of a prisoner's maximum term is not a constitutionally protected liberty interest that is inherent to the Due Process Clause. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979); *Thorpe v. Grillo*, 80 F. App'x. 215, 219 (3d Cir. 2003). Likewise, Pennsylvania state law does not create a liberty interest for state inmates to be released prior to the expiration of a valid sentence. *Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996)(parole is not a constitutionally protected liberty interest under Pennsylvania law); *Rogers v. Pa. Bd. of Probation and Parole*, 555 Pa. 285, 292, 724 A.2d 319, 323 (Pa. 1999)("parole is a matter of grace and mercy shown to a prisoner who has demonstrated to the Parole Board's satisfaction his future ability to function as a law-abiding member of society upon release before the expiration of the prisoner's maximum sentence."); *see also Weaver v. Pa. Bd. of Probation and Parole*, 688 A.2d 766, 770 (Pa. Commw. 1997)(under Pennsylvania law, parole is a favor, and the prisoner has no protected liberty interest in being released before a legitimately imposed sentence has expired.) Thus, absent the creation of a liberty interest in parole, a state's decision to deny parole does not create any procedural

due process protections. Since the right to reparole is not a protected liberty interest under state or federal law, Mr. Wicker cannot establish a procedural due process violation.

### C. Substantive Due Process Claim.

Although a Pennsylvania inmate has no protected liberty interest in parole that implicates procedural due process, the Third Circuit Court of Appeals recognizes that parole cannot be denied on constitutionally impermissible grounds. *Burkett*, 89 F.3d at 139 - 40 (parole cannot be denied solely on the basis of the inmate's race, religion, or gender). "When the Parole Board bases its decision on factors that bear no rational relationship to rehabilitation or deterrence, it transgresses the legitimate bounds of its discretion." *Block v. Porter*, 631 F.2d 233, 237 (3d Cir. 1980). The Third Circuit Court of Appeals has stressed that a substantive due process claim based upon alleged arbitrary and capricious actions is not easily mounted because the relevant level of arbitrariness required involves not merely action that is unreasonable, but rather, something more egregious, at times "conscience shocking." *Hunterson v. DiSabato*, 308 F.3d 236, 246 - 47 (3d Cir. 2002). Furthermore, "federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady,* 251 F.3d at 487.

Atiba Wicker suggests that the Board's November 20, 2008 decision denying him parole was arbitrary, capricious and based on impermissible standards.[6] Specifically, he contends the Board violated his substantive due process rights because it: (1) continues to base its denial on his repeated historical parole supervision failures; (2) for the first time the Board relied on the prosecuting attorney's negative parole recommendation as a reason for denying parole, and (3) because the Board acquiesced to Governor Rendell's "illegal parole moratorium" when denying him parole. The Court disagrees.

Mr. Wicker suggests that the Board failed to award him reparole despite his positive rehabilitative record. Yet, he offers no evidence to support his conclusion that the Board previously advised him that he would be granted parole if he completed Thinking for a Change, received the DOC's recommendation for parole, and remained misconduct free. Likewise, he offers no evidence that they overlooked these accomplishments when considering, but yet denying him, reparole. Mr. Wicker was advised that the Board would consider these issues as part of his November 2008 parole review, not that he would be granted parole if he completed a checklist of parole requirements. The record does not support a finding that the Board mechanically denied him reparole based on static findings unrelated to the overall goals of parole or without making an individualized determination as to

---

[6] In his Petition, Mr. Wicker challenges both his April 8, 2008, and November 20, 2008, denials for reparole. If the Court were to find that the Board's April 8, 2008, denial of reparole violated Mr. Wicker's substantive due process rights, the appropriate remedy would be for the Court to direct the Board to hold a new hearing. *See*, *e.g.*, *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 393 (3d Cir. 2003). Since Mr. Wicker has already received a subsequent hearing, his challenge to the Board's April 8, 2008 decision is rendered moot. Therefore, only the Board's November 20, 2008, denial of reparole remains at issue and will be examined by this Court.

-12-

his situation. While Atiba Wicker grows frustrated with the Board's repeated recitation of his "prior supervision failures" as a basis for the denial of reparoling him (doc. 1 at R. 20), he cannot deny that on two separate occasions, when granted the mercy of parole prior to the expiration of his four concurrent sentences for robbery, he absconded. Clearly, the Board's consideration of Atiba Wicker's prior parole supervision failures is valid and bears an obvious rational relationship to his rehabilitation and legitimate parole objectives. His prior supervision failures remain a relevant issue for the Board's consideration when exercising their discretionary role of granting or denying him reparole. Furthermore, the Court notes that Atiba Wicker's prior parole failures did not stand alone as the reason he was denied reparole, it was one of many factors considered by the Board.[7]

Next, Mr. Wicker contends that it was improper for the Board to consider the prosecuting attorney's negative recommendation in connection with his November 2008 review because it was never mentioned as a reason to deny reparole on previous occasion. Atiba Wicker's argument is unsupported. Consideration of the District Attorney's recommendations at any point in the reparole process is no more impermissible than is the Board's consideration of the DOC's parole recommendations. In reading between the lines of Mr. Wicker's concern here, he

---

[7] Mr. Wicker relies on *Biggs v. Terhune*, 334 F.3d 910, 916 - 17 (9th Cir. 2003), to suggest that "[o]ver time .... should [he] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." *See* Doc. 1 at RR. 19 - 20. However, *Biggs*, involves a California state inmate and California state parole procedures. California's parole scheme, unlike Pennsylvania's, gives rise to a cognizable liberty interest in the release of parole, even for prisoners who have not already been granted a parole date. (*Id*. at 914.) Thus, *Biggs* is readily distinguishable from the case at bar.

takes issue not with the Board's reliance on the prosecuting attorney's recommendations, but the district attorney's motive for making the negative recommendation. Mr. Wicker believes that the prosecuting attorney's negative parole recommendation was issued in retaliation for his refusal to testify for the Commonwealth in a murder trial. Based on this belief, Mr. Wicker filed a motion for the Court to conduct an in camera review of the Philadelphia County prosecuting attorney's negative parole recommendation. *See* Doc. 14, Motion for In Camera Inspection. This Court declines to exercise its discretion and conduct such a review.[8]

Even if proffered by the prosecuting attorney in retaliation for his non-cooperation, Atiba Wicker fails to provide any evidence that the Board was aware of the district attorney's impure motives, or that it sought to perpetuate this alleged retaliation by denying his release on parole. "Findings that in the past (or present), employees of other state departments or agencies have exhibited a bias against writ writers do not support a conclusion that the defendants in this case, members of the Board, have acted and continue to act with retaliatory animus in denying prisoners parole." *Johnson v. Rodriquez*, 110 F.3d 299, 312 - 13 (5th Cir.), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997). Given the Board's amorphous nature of elements and issues to be considered when exercising its discretion to

---

[8] Based on a review of the filings and exhibits presented to the Court by the parties in this case, the parties have developed the record sufficiently for this Court to make a ruling on Atiba Wicker's habeas petition without reviewing the prosecuting attorney's negative parole recommendation. *See Schriro v. Landrigan*, 550 U.S. 465, 474 - 75, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007)("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.") For reasons discussed *infra*, such is the case in this matter.

grant parole, the Court is confident based on the record that there is more than "some evidence" to support the Board's finding even if the prosecuting attorney's comments were excluded from consideration.

Atiba Wicker's final argument centers around the Commonwealth's 2008 parole moratorium. Mr. Wicker speculates that but for Governor Rendell's parole moratorium, he would have been paroled in November 2008. Mr. Wicker contends that Governor Rendell illegally usurped the Board's exclusive power to grant or refuse parole when issuing the parole moratorium. Mr. Wicker's assertion is unsupported. Documents submitted by Mr. Wicker suggest that Governor Rendell requested the Board to refrain from granting parole for a period of time after two violent Pennsylvania offenders, on parole, shot and killed two law enforcement officers, and that the Board, in an exercise of this discretion, complied with the Governor's request. (*See* Doc. 1 at R. 38)("I don't have the right to legally oppose it, but I have the right to ask the parole board to refrain it, so guess what? They're refraining it...") Clearly, the Board's election to temporarily refrain from granting parole in itself was an exercise of its parole authority. The Board enacted with an abundance of caution when temporarily suspending parole in the face of two recent and tragic events triggered by the action of two violent parole offenders it had granted the privilege of parole. Temporarily suspending parole releases pending a review of these procedures ensured that it carried out one of its primate mandates in regards to parole decisions — that the process by which it released convicts prior to the expiration of their valid sentences does not interfere with the safety of the public. *See* 61 PA. CON. STAT. § 331.1 (repealed 2009, Aug. 11, P.L. 147, No. 33, § 11(b)).

*See now* 61 PA. CON. STAT. § 6102(2)). Nonetheless, Mr. Wicker does not demonstrate how the three month statewide suspension of parole was arbitrary, capricious or motivated by any retaliatory animus. During this time the Board continued to conduct hearing and review cases and exercise its discretion as to parole decisions as evidenced by his November 2008 review. This is not a situation where parole was granted before the moratorium or during the moratorium but release was delayed due to the moratorium. Here, the Board had several valid undisputed reasons justifying its denial of Atiba Wicker's reparole. Mr. Wicker has failed to demonstrate that the Board changed the manner in which it addressed parole applications due to the moratorium when considering him for parole in November 2008. "The temporary suspension of parole does not rise to the level arbitrariness to support a substantive due process challenge." *Curley v. McVey*, No. 07-0145, 2009 WL 589809, *7 fn. 7 (W.D. Pa. March 9, 2009).

It cannot be disputed that in this case there was "some basis" for the Board's decision to deny Mr. Wicker reparole in November 2008. Moreover, he has failed to direct the Court to any factor relied upon by the Board the could be described as "conscience shocking." Atiba Wicker does not allege that he was denied parole on the basis of his race, religion, ethnicity or other arbitrary factor. Mr. Wicker's claims are without merit because the factors relied upon by the Board in denying him reparole in November 2008 are consistent with those considerations that are mandated by the parole statutes. The Court cannot find that the Board's stated reasons for denying Mr. Wicker reparole were arbitrary reasons not in his best interests, or, not rationally related to the legitimate interests of the Commonwealth.

-16-

The Court therefore finds the Board's denial did not result in a violation of Atiba Wicker's substantive due process. Based on the above, habeas relief will be denied as to Mr. Wicker's substantive due process claims.

### D. Mr. Wicker's Motion for Summary Judgment.

On September 29, 2009, Mr. Wicker filed a Motion for summary judgment in this matter. (Doc. 16, Mot. for Summ. J.) Atiba Wicker submitted a declaration to the Court in support of his motion. (Doc. 17, Decl. or Atiba Wicker.) It appears that Mr. Wicker forgot to file a copy of his supporting brief with the Court but did serve one on Respondents. *See* Doc. 18, Br. in Opp'n to Petitioner's Mot. for Summ. J.

The allegations raised in the summary judgment motion echo the claims raised in his Petition with respect to Mr. Wicker's assertion that he "was denied parole release as a direct result of an unconstitutional Moratorium imposed by" Governor Rendell, (*id.* at R. 1). As this claim has already been addressed and found lacking in merit, Petitioner's motion for summary judgment will be denied.

## V. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability (COA) has been issued. A certificate of appealability should be issued only when a petitioner has

made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Applying this standard to the instant case, the court concludes that Petitioner has failed to demonstrate any violation of his constitutional rights. Accordingly, a certificate of appealability will be denied.

**VI.     Conclusion**

For the foregoing reasons, the Petition for Writ of Habeas Corpus is denied, a certificate of appealability is denied, and the pending motions are denied.

An appropriate Order follows.


**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**

**Date: March 24, 2010**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ATIBA WICKER, : | |
| : | |
| Petitioner : | |
| : | CIVIL NO. 3:CV-09-0167 |
| v. : | |
| : | (Judge Caputo) |
| PA BOARD of PROBATION and : | |
| Parole, *et al.*, : | |
| : | |
| Respondents : | |

**O R D E R**

**AND NOW**, this **24th** day of **MARCH,** for the reasons set forth in the foregoing Memorandum, it is ordered that:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (doc. 1) is denied;

2. Petitioner's motion for in camera inspection (doc. 14) is denied;

3. Petitioner's motion for summary judgment (doc. 16) is denied;

4. A certificate of appealability is denied; and

5. The Clerk of Court shall mark this matter closed.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**